IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FRANCISCO JAVIER RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:16-CV-00157 |
| VS. | § | |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment [Def.'s Mot. for Summ. Judg., Doc. No. 17][1] and Plaintiff's Response to Defendant's Motion for Summary Judgment [Pl.'s Resp. to Def.'s Mot. for Summ. Judg., Doc. No. 18]. According to the pleadings, Plaintiff, Francisco Rodriguez ("Plaintiff" or "Rodriguez") is a teacher employed by Defendant, the Brownsville Independent School District ("Defendant" or "the School District"). [Pl.'s Compl., Doc. No. 1 at 2].

**I. Background**

In his complaint, Plaintiff asserts three basic claims: (1) that the School District discriminated against him because of his age, sex, and disability by not promoting him to the position of upper-division instructor; (2) that the School District discriminated against him because of his age, sex, and disability by transferring him to another school; and (3) that the School District retaliated against him for filing various employment complaints by transferring him to another school. [Pl.'s Compl., Doc. No. 1]. He brings these claims under Title VII of the

---

[1] Defendant's written motion does not conform to local rules. All parties shall read and follow this Court's rules for submitting written documents, including the requirement for double spacing. In the future, the Court will not hesitate to strike any motion that does not adequately conform.

1

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 126 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794(a), and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.* [Pl.'s Compl., Doc. No. 1 at 1].

Plaintiff has worked for the School District since being hired as a permanent substitute in 2011. [Pl.'s Compl., Doc. No. 1 at 2]. In 2013, Rodriguez filed for, and was granted, a disability accommodation for Chronic Interstitial Cystitis, an ailment affecting the bladder. [*Id.*]. He was 44 years old at the time that he inquired about the position which forms the basis of his complaint. [*Id.*]. According to the pleadings, Plaintiff is openly gay. [*Id.* at 3].

In August, 2014, Rodriguez inquired about an upper-division teaching position with Christina Garzoria, a placement counselor employed by the School District. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg., Doc. No. 18 at 6]. In response to the inquiry, Garzoria asked the Plaintiff, "doesn't your 504 (disability accommodation) require that you be near a restroom?" [*Id.*]. She also informed him that the job had already been filled. The position had been given to a teacher younger than Rodriguez. [*Id.*]. In fact, according to the summary judgment evidence, the School District hired the only person who applied. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. Ex. 5, Doc. No. 18-5] Rodriguez also admitted that no one prevented him or discouraged him from applying for the position prior to its being filled. [*Id.*]. Plaintiff never applied for the position. At his deposition, Rodriguez conceded that he did not file a formal application for the position, and did not inquire about it until after the position had been filled. [Def.'s Mot. for Summ. Judg. Ex. 3, Doc. No. 17-3].

On December 22, 2014, Plaintiff filed a discrimination claim with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission ("the

EEOC Complaint") naming the School District and alleging discrimination based on age and disability. [Def.'s Mot. for Summ. Judg. Ex. 1, Doc. No. 17-1]. He later amended his complaint to include, in his words, discrimination based on "gender (sexual orientation)." [Def.'s Mot. for Summ. Judg. Ex. 2, Doc. No. 17-2].

During this time, Rodriguez had ongoing personal disputes with two female colleagues, Career Placement Officer Christina Garzoria and teacher Michael Ann Rivera. [Def.'s Mot. for Summ. Judg. Ex. 1, Doc. No. 17-1]. Although the genesis of the controversy is unclear, the conflicts resulted in at least two reprimands for Rodriguez. The first, dated September 15, 2014, rebuked Rodriguez for criticizing Rivera's assignments in front of students and for transporting students in his personal vehicle. [Def.'s Mot. for Summ. Judg. Ex. 5, Doc. No. 17-5]. The second, dated October 1, 2014, is a written reprimand citing a verbal altercation that Rodriguez engaged in with Garzoria in front of students in which he "raised [his] hand at her." [Def.'s Mot. for Summ. Judg. Ex. 6, Doc. No. 17-6]. At the time of the incident, Rodriguez signed the latter document but wrote at the bottom of the page that "initials or signature do not indicate agreement." [*Id.*]. At his deposition, Rodriguez struck a different tone. When asked, "[D]o you believe Ms. Garza Limon [the principal] was justified in giving you this memorandum?" he replied, "Yes, sir." [Def.'s Mot. for Summ. Judg. Ex. 3, Doc. No. 17-3].

The personnel conflicts came to a head in February, 2015. First, on February 4, Plaintiff's and Garzoria's vehicles nearly collided on a road outside the school. [Def.'s Mot. for Summ. Judg. Ex. 14, Doc. No. 17-14]. Each accused the other of attempting to cause a collision, and Rodriguez filed a police report. [*Id.*]. The day after the car incident, Principal Aimee Garza-Limon was notified that the Texas Department of Family and Protective Services ("DFPS") had begun investigating Plaintiff on allegations of abuse or neglect of students. [Pl.'s Resp. to Def.'s

Mot. for Summ. Judg. Ex. 19, Doc. No. 18-19]. Plaintiff asserts that Garzoria filed the initial complaint against him, and that he was "stereotyped as a child molester because of his non-conformity with traditional gender roles." [Pl.'s Resp. to Def.'s Mot. for Summ. Judg., Doc. No. 18 at 10, 16,].

As a result of the conflicts between Rodriguez and Garzoria, the school's principal requested that Plaintiff be transferred to another school or be placed on leave. [Def.'s Mot. for Summ. Judg. Ex. 9, Doc. No. 17-9]. Principal Garza-Limon sent an email to Assistant Superintendent Carlos Guerra requesting that Rodriguez be moved because the issues had "become a safety concern." [*Id.*]. It does not appear the request was immediately granted. [*Id.*].

On April 20, 2015, DFPS wrote to Plaintiff to inform him that each of four allegations had been "ruled out"—that it was "reasonable to conclude that the alleged abuse or neglect did not occur." [Def.'s Mot. for Summ. Judg. Ex. 11, Doc. No. 17-11]. In May, Plaintiff made another complaint ("the HR complaint"), this one to the local human resources specialists for the School District. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. at 11, Doc. No. 18]. The School District initiated a local HR investigation on May 28, 2015. [*Id.*]. Although the School District began investigating Plaintiff's claims, Defendant transferred both Garzoria and Plaintiff to different schools before the investigation was complete. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. Ex. 27, Doc. No. 18-27]. At his deposition, Assistant Superintendent Guerra stated the reasons that led him and Superintendent Esperanza Zendejas to move both teachers: "It was a personality conflict, and that unless we did something about it, it was going to continue . . . ." [*Id.*]. He stated: "[Ms. Garzoria was also moved because] she had that issue going with him. And, you know, it's kind of like you don't want to show, you know, that you were favoring anyone over the other." [*Id.*].

The School District transferred both Garzoria and Plaintiff to other schools within the district, both without interruptions or adjustments to their pay rate or number of days worked. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. Exs. 28, 29, Doc. Nos. 18-28, 18-29]. Plaintiff was transferred to Brownsville Learning Academy, a school for remedial children where his work allegedly involves tasks that are different from his previous position. [*Id.*].[2] As far as the record shows, Rodriguez still teaches there. [Pl.'s Compl., Doc. No. 1 at 5].

On August 29, 2016, Plaintiff filed this lawsuit. [Pl.'s Compl., Doc. No. 1]. The Defendant has moved for summary judgment on each of Plaintiff's three claims. [Def.'s Mot. for Summ. Judg., Doc. No. 17]. For the following reasons, the Court grants the Defendant's motion.

## II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering the evidence, a court will "construe all facts and inferences in the light most favorable to the nonmoving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). After a movant submits a properly supported motion, the burden shifts to the non-moving party to show that summary judgment is not proper. *Celotex Corp. v Catrett*, 477 U.S. 317, 322–25 (1986). The non-moving party must provide specific facts to show that there is a genuine dispute of material fact. *Id.* at 324.

---

[2] The summary judgment evidence suggests that, while Rodriguez maintained his pay level, the transfer to the Brownsville Learning Academy was arguably an adverse employment action, given the prevailing conditions at that campus.

## III. Plaintiff's First Discrimination Claim

Plaintiff's first claim is that he was not given a job as an upper-division instructor because of the School District's discrimination against him based on age, disability, and sex. [Pl.'s Compl., Doc. No. 1].

Under the Age Discrimination in Employment Act, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To make out a prima facie case of discrimination based on age, "plaintiff must show that '(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Rachid v. Jack In The Box*, 376 F.3d 305, 309 (5th Cir. 2004) (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003).

Under the ADA, to make out a prima facie case of discrimination based on disability, Plaintiff must show that (1) he has a disability; (2) he is qualified for the job in question; (3) an adverse employment decision was made because of his disability and (4) he was replaced by or treated less favorably than non-disabled employees. *EEOC v. Chevron*, 570 F.3d 606, 615 (5th Cir. 2009).

To make a prima facie case of sex discrimination under Title VII requires that a plaintiff show the following: (1) that he belongs to a protected class, (2) that he was qualified for the position, (3) that he suffered an adverse employment action, and (4) that he was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated

employees were treated more favorably. *Grimes v. Wal-Mart Stores Texas*, 505 F. App'x 376, 379 (5th Cir. 2013).

Plaintiff also brings his claims under state law analogs to the federal statutes. [Pl.'s Compl., Doc. No. 1 at 1]. The Texas Commission on Human Rights Act ("TCHRA") was designed to "provide for the execution of the policies of Title VII." Tex. Lab. Code 21.001(1). The Supreme Court of Texas has held that the Texas Legislature "intended to correlate state law with federal law in employment discrimination cases." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)). Therefore, both federal and state courts therefore "apply analogous federal statutes and cases when interpreting TCHRA." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 318 (5th Cir. 2016) (unpublished); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (stating that Texas courts rely on federal law to guide the reading of TCHRA).

Whether a claim is for age, disability, or sex, common threads run through each of the three types of discrimination claims above: to make out a prima facie case a plaintiff must always show that he was qualified for the job, and either did not get the position for which he applied or suffered an adverse employment action because of the prohibited conduct. *See Rachid*, 376 F.3d at 309 (age discrimination); *Chevron*, 570 F.3d at 615 (disability discrimination); *Grimes*, 505 F. App'x at 379 (sex discrimination). A plaintiff who cannot show that he is qualified cannot establish a prima facie case.

Rodriguez cannot establish a prima facie case for age, disability, or sex discrimination under either federal or state law because he never applied for the job that he claims the School

District denied him. [Def.'s Mot. for Summ. Judg. Ex. 3, Doc. No. 17-3]. By the time Rodriguez initially emailed the counselor to inquire about the position, it had already been filled. [*Id.*].[3]

Without showing that he applied for (or even made a timely inquiry about) the position, Plaintiff cannot show that he was qualified for it or that he suffered an adverse employment action as a consequence of any alleged wrongdoing in denying him the position. A person has not suffered an adverse employment action or decision, nor has he or she been discharged or constructively discharged from a position that the individual neither applied for, nor even inquired about prior to the position being filled. The law does not require an employer to read the minds of its employees. Without showing that he was qualified for, and was denied a job he sought, Rodriguez cannot establish a prima facie case that he was discriminated against by being denied a job on the basis of his, age, disability, or sex under either federal or state law. The Court grants Defendant's motion for summary judgment as to this claim because Plaintiff has failed to raise a genuine dispute as to any material fact that would allow a reasonable jury to make a finding of discrimination.

### IV. Plaintiff's Second Discrimination Claim

Plaintiff next claims that the School District's discrimination against him based on his age, sex, and/or disability resulted in his transfer to a different school. [Pl.'s Compl., Doc. No. 1 at 6, 8-9]. Again, under the ADA for disability, the ADEA for age, or Title VII for sex, Plaintiff must establish a prima facie case to proceed. *See Rachid*, 376 F.3d at 309 (age discrimination);

---

[3] The Plaintiff does not contest the accuracy of this statement. Instead, he takes the position that he was wrongfully discouraged from applying by being told that the position had been filled. If this was considered to be evidence of discrimination, an employer would be put in an impossible situation. It could either tell an individual the truth (that the position was filled) and be sued, or tell that person a lie (that the position was not filled) and be sued. While one might debate whether Garzoria's inquiry concerning his disability accommodation had any discriminatory motive (it clearly could have just the opposite motive—she may have been inquiring in an attempt to accommodate Plaintiff), that inquiry was after the fact and clearly had no bearing on the fact that the School District had already chosen the only candidate that had actually applied.

*Chevron*, 570 F.3d at 615 (disability discrimination); *Grimes*, 505 F. App'x at 379 (sex discrimination).

For any of the three, if the Plaintiff establishes a prima facie case, the *McDonnel-Douglas* burden-shifting framework controls. *Squyres v. Heico Companies*, 782 F.3d 224, 231 (5th Cir. 2015) (applying the *McDonnell-Douglas* framework in an age discrimination case); *Chevron*, 570 F.3d at 615 (applying the *McDonnell-Douglas* framework in a disability case); *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (applying the *McDonnell-Douglas* framework in a sex discrimination case). The burden-shifting framework proceeds in three steps. The first is the plaintiff's burden to establish a prima facie case. *See, e.g.*, *Grimes*, 505 F. App'x at 379. If the plaintiff does so, it becomes the employer's burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer can establish such a reason, the plaintiff must show that the employer's proffered reason is merely a pretext for discrimination. *Id.* If the plaintiff cannot raise a fact issue as to pretext, he or she has not satisfactorily contested a Motion for Summary Judgment.

Assuming *arguendo* that Plaintiff has made out a prima facie case on these claims, Rodriguez has not shown any issues of material fact that the School District's reason for moving him was not legitimate. Here, the School District rebutted the Plaintiff's prima facie case because it brought forth a nondiscriminatory reason for his transfer: Rodriguez had constant problems with his colleagues at his former school. Defendant argues that its non-retaliatory reason for transferring the Plaintiff was this ongoing conflict with his colleagues.

In support of that position, Defendant has filed evidence that Rodriguez had received multiple reprimands from school officials for public incidents with Garzoria and Rivera. [Def.'s Mot. for Summ. Judg. Ex. 5, Doc. Nos. 17-5, 17-6]. He and Garzoria had nearly been involved in

9

a car accident outside the school, and each blamed the other for intending to cause the collision. [Def.'s Mot. for Summ. Judg. Ex. 14, Doc. No. 17-14]. Principal Garza-Limon stated that the conflict was beginning to affect the climate on campus. [Def.'s Mot. for Summ. Judg. Ex. 9, Doc. No. 17-9]. Assistant Superintendent Guerra said that the reason Plaintiff (and Garzoria) were transferred was because "[i]t was a personality conflict, and that unless we did something about it, it was going to continue . . . ." [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. Ex. 27, Doc. No. 18-27]. Defendant has met its burden under the *McDonnell-Douglas* framework to establish a non-retaliatory reason for the action.

Since Defendant has met its burden to establish legitimate reasons for the adverse employment action, the burden shifts back to Rodriguez to show, or more precisely to raise an issue of material fact, that the reason given was mere pretext. Plaintiff has not done so. Rodriguez has shown the Court no evidence that the proffered reason for the move is false. In fact, in his deposition, he acknowledged the incidents, and found it reasonable that he should have received a reprimand. [Def.'s Mot. for Summ. Judg. Ex. 3, Doc. No. 17-3]. These are nondiscriminatory reasons for the transfer, and he has shown no evidence that they should be considered a pretext.

Having failed to produce evidence sufficient to establish a genuine issue of material fact, the Plaintiff has not met his summary judgment burden. Accordingly, the Court grants the Defendant's motion on this claim.

### V. Plaintiff's Retaliation Claim

Plaintiff alleges that the School District engaged in prohibited retaliation against him because he was transferred to another school after filing an Equal Employment Opportunity Commission ("EEOC") claim and making a local complaint to the School District's human

resources department (hereinafter the "HR claim"). [Pl.'s Resp. to Def.'s Mot. for Summ. Judg., Doc. No. 18 at 21].

The Fifth Circuit has held that the *McDonnell-Douglas* framework controls in a retaliation case as well. *Sherrod v American Airlines Inc.*, 132 F.3d 1112, 1121 (5th Cir. 1998). As in the discrimination context, the burden begins with the plaintiff to make out a prima facie case. *Id.* Once a plaintiff has established a prima facie case, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If a defendant can do so, the burden again shifts to the plaintiff to come forward with evidence sufficient to allow a reasonable trier of fact to find that the proclaimed reason is a mere pretext for retaliation. *Id.* at 1122.

A plaintiff may establish a prima facie case of retaliation under Title VII by showing (1) that he engaged in a protected activity, (2) that he suffered an adverse employment action, and that (3) there is a causal link between the protected activity and the adverse action. *Manning v. Chevron*, 332 F.3d 874, 883 (5th Cir. 2003). To establish the causation element, laintiff must either present direct evidence of retaliation, or circumstantial evidence creating a rebuttable presumption of retaliation. *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007).

Additionally, unlike discrimination claims based on status, which may be proven under the mixed-motive standard of causation, retaliation claims require the plaintiff to show but-for causation. *Univ. of Texas Southwest Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). A plaintiff must show that retaliation was the but-for cause of the adverse employment action, not merely that the it was one motivating factor among many. *Id.*

Plaintiff claims that the School District retaliated against him because he filed the EEOC claim and because he filed the local HR claim. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. at

21]. The filing of an EEOC complaint or a local HR complaint can form the basis of Title VII protected conduct, and thus can be the basis of a retaliation claim. *See DeHart v. Baker Hughes Oilfield Operation,, Inc.*, 214 437, 442 (5th Cir. 2007), *Long v. Eastfiled College*, 88 F.3d 300, 306 n. 5 (5th Cir. 1996).

As to the EEOC claim, laintiff fails to establish a prima facie case. He has not evidence the required causal link because he has not brought forth any facts to show that the School District was aware of the EEOC claim at the time of the alleged retaliation. Rodriguez has provided no evidence to show that Assistant Superintendent Guerra or Superintendent Zendejas, the decision makers who ultimately transferred Rodriguez, were aware of his EEOC claim when they made their decision. The burden under *Celotex* is with the , and he has not met it.[4]

As to the HR claim, the Court will assume, *arguendo*, that Plaintiff has established a prima facie case of retaliation. Plaintiff has at least established that the School District knew of the HR claim prior to the transfer, and that it occurred closer in time to the transfer than did the EEOC claim. [Pl.'s Resp. to Def.'s Mot. for Summ. Judg. Doc. No. 18at 11]. Nevertheless, laintiff fails to carry his burden of production further, as he has produced no facts from which a jury could conclude that the non-retaliatory reason given by the School District for his transfer was not a pretext for retaliation.

As stated above, the Plaintiff had significant conflicts with his co-workers. The infighting among the teachers at the school gave the School District ample reason to transfer the two combatants. The School District had a legitimate desire to protect the learning environment for its students, and to take measures to prevent open hostilities between teachers on its campus.

---

[4] While this Court finds that Rodriguez failed to raise issues of material fact which, if accepted by the jury, would establish a prima facie case, he also failed to raise a fact issue that would rebut the School District's non-retaliatory reason for the transfer.

These reasons establish a non-retaliatory, legitimate reason for the transfer, sufficient to meet the Defendant's burden under the second step of the *McDonnell-Douglas* framework.

Once Defendant has established that it had a non-retaliatory reason for transferring Rodriguez, the burden shifts back to the Plaintiff to establish that the reason is a mere pretext. *See Sherrod*, 132 F.3d at 1121. One way Plaintiff could begin to prove that Defendant's proffered reason is not worthy of credence is by providing evidence that shows Defendant's proffered reason is false. *See Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 147–48 (2000). Again, Rodriguez has brought forward no evidence to bring the School District's assertions into doubt. In his deposition, he admitted the discord. A plaintiff who fails to adduce such evidence has failed to meet his burden under the third step of the *McDonnell-Douglas* framework. *See Sherrod* at 1123 ("Viewing the summary judgment evidence in the light most favorable to [the plaintiff], a 'reasonable and fair minded person' would conclude that the explanation proffered by [the defendant] was not a pretext for unlawful retaliation.").

Having failed to supply evidence upon which a reasonable jury could support a finding of pretext, Plaintiff has failed to raise sufficient evidence to establish a genuine issue of material fact sufficient to survive summary judgment. Therefore, the Court grants the Defendant's motion for summary judgment as to this claim as well.

## VI. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. [Doc. No. 17]. Also before the Court are Defendant's Motion in Limine, Plaintiff's Motion in Limine, and Plaintiff's Amended Motion in Limine. [Docs. No. 20–22]. These motions are denied as moot.

Signed this 29th day of September, 2017.

                                                          Andrew S. Hanen
                                                          United States District Judge